UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
 :
KARIF PATTERSON, :
 : 12-CV-6300 (ARR)(LB)
            Plaintiff, :
 : <u>NOT FOR ELECTRONIC</u>
    -against- : <u>OR PRINT PUBLICATION</u>
 :
THE CITY UNIVERSITY OF NEW YORK and : <u>OPINION AND ORDER</u>
THE CITY COLLEGE OF NEW YORK, :
 :
            Defendants. :
 :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

    Plaintiff Karif Patterson brings this action against defendant City University of New York ("CUNY")[1] under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. He asserts that faculty and administrators at the Sophie Davis School of Biomedical Education ("Sophie Davis") discriminated against him on the basis of race. Now before the court is defendant's motion for summary judgment. Plaintiff opposes the motion and also appeals an order denying his request to conduct additional discovery. For the reasons set forth below, defendant's motion for summary judgment is granted, and plaintiff's discovery appeal is denied.

## BACKGROUND

    The following facts are undisputed except where otherwise noted. Plaintiff, who is African American, was formerly enrolled in the dual-degree program at Sophie Davis, a school within the City College of New York. Def.'s Local Rule 56.1 Statement of Undisputed Facts

---

[1] Plaintiff's complaint also names City College of New York as a defendant, but City College of New York is a senior college within CUNY rather than a separate entity. Therefore, "CUNY is the properly named defendant in this action." <u>Clissuras v. City Univ. of N.Y.</u>, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (citing N.Y. Educ. Law §§ 6202(2) & 6202(5)).

1

("Def.'s Facts"), Dkt. #35, ¶ 1. Sophie Davis offers a seven-year program that combines undergraduate education with the first two years of medical school. Id. ¶ 4. After students successfully complete five years in the Sophie Davis program, they can receive a Bachelor of Science degree and transfer to one of six cooperating medical schools, where they can obtain an M.D. after completing two additional years. Id. ¶ 5.

Plaintiff enrolled at Sophie Davis in 2006. Id. ¶ 7. During his first year, plaintiff failed two courses, then repeated and passed both courses in the summer 2007 term. Decl. of Christopher Coulston ("Coulston Decl."), Dkt. #39, Ex. A. During the 2007-2008 school year, plaintiff failed four courses. Def.'s Facts ¶ 9. According to the Sophie Davis Student Handbook, a student who fails more than two courses in a school year will be placed on a "prescription year." Coulston Decl., Ex. B, at 14. During the prescription year, the student "must retake, and pass, or in some other way successfully complete the requirements of all courses failed in the previous academic year." Id. at 32. A student who is repeating a course during a prescription year will not be allowed to retake the course again if the course is not successfully completed, and "a student may not be granted more than one prescription year." Id. Based on this policy, plaintiff was placed on a prescription year during the 2008-2009 school year. Def.'s Facts ¶ 12. During the spring semester of his prescription year, plaintiff failed a course he was repeating and was dismissed from the program. Id. ¶ 13. Plaintiff appealed the dismissal, and after review by an Ad Hoc Appeals Committee, Sophie Davis reinstated plaintiff to the program. Id. ¶¶ 14-15.[2]

In the spring 2012 semester, plaintiff enrolled in Introduction to Clinical Medicine ("ICM"), a required course for graduation from Sophie Davis. Id. ¶ 21. In order to pass the course, students must pass four unit exams with a score of at least 70. Coulston Decl., Ex. D. A

---

[2] The parties provide differing accounts of the circumstances surrounding plaintiff's appeal of his first dismissal and his reinstatement, but this dispute is not material to the instant motion.

student may be permitted to retake up to three unit exams if his or her attendance record is satisfactory. Id. Plaintiff failed the Hematology-Renal unit exam with a score of 47 and passed the reassessment with a score of 74. Def.'s Facts ¶ 27. Plaintiff initially failed the Gastro-Endo-Rheum unit exam by one question, but he contacted the course instructors to challenge one of the multiple choice questions and they accepted plaintiff's answer, resulting in a passing score. Id. ¶¶ 28-29. Plaintiff also failed the Cardiopulmonary unit exam with a score of 55 and failed the reassessment with a score of 65. Id. ¶¶ 26, 30. Since plaintiff had not successfully completed the Cardiopulmonary unit exam, he failed the ICM course. Id. ¶ 30.

On April 24, 2012, plaintiff sent a letter to Maurizio Trevisan, the dean of Sophie Davis, appealing his failing grade in ICM. Coulston Decl., Ex. F. He argued that the questions on the Cardiopulmonary reassessment were unclear and unfair. Id. In particular, plaintiff asserted that he should be given another opportunity to demonstrate his knowledge of the material because four students who had failed the Cardiopulmonary exam and reassessment in the prior year had been given that opportunity. Id.

It is undisputed that, in 2011, four students in ICM who failed both the Cardiopulmonary unit exam and reassessment were permitted to take another assessment. Def.'s Facts ¶¶ 41-42. Two of these students were African American, one was Caucasian, and one was Asian-American. Id. ¶ 40. Ethan Fried, the ICM Course Coordinator, asserts that he met with the four students who failed the Cardiopulmonary reassessment in 2011, and they "raised concerns about the clarity of some of the questions on the exam." Decl. of Dr. Ethan Fried ("Fried Decl."), Dkt. #37, ¶ 5. Fried reviewed all questions that the students considered unclear, as well as all questions that had an error rate of fifty percent or greater, and he "determined that that the exam was unfair since a significant number of the questions were ambiguous or misleading." Id. ¶¶ 5-

3

6. Fried states that, after consulting with Deputy Dean for Academic Affairs Donald Kollisch, he determined that the four students who had failed the reassessment "should receive additional questions to evaluate their mastery of the Cardiopulmonary subject matter." Id. ¶ 6. He asserts that there were no multiple choice questions left in the question bank that he had used for the initial exam and reassessment, so he gave the students an essay exam. Id. ¶ 7. All four students passed the essay exam and therefore received passing scores on the Cardiopulmonary exam. Def.'s Facts ¶ 43. Fried states that, after the 2011 exam, he discarded from the multiple choice question bank any questions "that were deemed ambiguous or unclear." Fried Decl. ¶ 8. In 2012, after plaintiff and one other student failed the Cardiopulmonary reassessment, Fried asserts that he reviewed the exam and in his "academic judgment" determined it to be fair, so he did not give the students an additional reassessment as he had in the previous year. Id. ¶ 9.

In a letter dated May 18, 2012, Trevisan informed plaintiff that the Committee on Student Appeals had denied plaintiff's appeal of his failing ICM grade. Coulston Decl., Ex. H. According to the letter, the committee found that the decision to give plaintiff a failing grade "was in accordance with the approved and established policies of the ICM course and of the Sophie Davis School" and "was neither arbitrary, capricious, nor prejudicial." Id.

On May 24, 2012, Kollisch sent plaintiff a letter regarding his academic status. Coulston Decl., Ex. I. The letter stated that plaintiff was not eligible for another prescription year since he had already been granted one. Id. According to the letter, if a fifth-year student who is not eligible for a prescription year receives a course grade below a 70, "that student would ordinarily be dismissed." Id. In plaintiff's case, the Student Academic Progress Committee recommended that plaintiff be awarded a Bachelor of Science degree, but Sophie Davis would not approve plaintiff to transfer to a cooperating medical school or sponsor him to sit for the national medical

4

licensing examination. Id. Kollisch's letter stated that, in order to accept this recommendation, plaintiff had to sign and return a "Waiver of Advancement to Medical School." Id. The letter stated that failure to return the waiver within ten business days "will result in referring your record back to the Student Academic Progress Committee for dismissal." Id. Plaintiff signed and returned the waiver, but added an attached letter stating that he did not agree with its contents and only signed it because he was "forced to do so in order to receive my Bachelor of Science Diploma." Coulston Decl., Ex. J.

Plaintiff filed this action on December 21, 2012, alleging that CUNY discriminated against him on the basis of race. Compl., Dkt. #1. He asserts that, by denying him the opportunity to retake the ICM unit exam, Sophie Davis treated him differently from a Caucasian student with a lower score who had been given that opportunity the year before. Id. ¶¶ 13-14. He asserts that he had already been accepted as a delayed entrance transfer student to the College of Medicine at SUNY Downstate Medical Center, but, as a result of CUNY's actions, he had to "give up his right to advance to medical school in order to obtain the Baccalaureate Degree that he had earned." Id. ¶¶ 16, 18. Plaintiff states that "[t]he decision by CUNY to not permit Plaintiff to retake ICM has destroyed the value of Plaintiff's six years of higher education and his lifelong dream of becoming a physician." Id. ¶ 19. He seeks compensatory damages for tuition, lost earnings as a physician, and other damages; injunctive relief requiring CUNY to reinstate plaintiff into Sophie Davis and permit him to retake ICM; and attorney's fees and costs.

Defendant originally requested leave to file a motion to dismiss. At a conference on January 31, 2013, the court directed the parties to proceed to discovery, with a focus on plaintiff's allegation that he was denied the opportunity to retake the ICM exam while a similarly situated white student was allowed to retake it. The parties engaged in discovery, including

depositions of plaintiff and CUNY faculty. Magistrate Judge Lois Bloom granted the parties three extensions of the discovery deadline, with the final deadline on November 22, 2013. Following this deadline, defendant moved for summary judgment. Dkt. #34.

**DISCUSSION**

**I.      Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir.

1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

## II. Plaintiff's Title VI Claim

Title VI provides that "[n]o person in the United States shall, on the ground or race, color, or national origin, be excluded form participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In order to establish a claim under Title VI, "the plaintiff must show, inter alia, that the defendant discriminated against him on the basis of race, that that discrimination was intentional, and that the discrimination was a substantial or motivating factor for the defendant's actions." Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted).

Courts in this Circuit analyze Title VI claims using the same burden-shifting framework established for Title VII employment discrimination claims. See, e.g., Lopez v. Webster Cent. Sch. Dist., 682 F. Supp. 2d 274, 277 (W.D.N.Y. 2010) (collecting cases); Jackson v. Univ. of New Haven, 228 F. Supp. 2d 156, 159 (D. Ct. 2002). Under the well-settled approach of McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Id. at 802. In a Title VI claim for discrimination by an educational institution, the plaintiff can establish a prima facie case "by

7

demonstrating that: (1) [he] is a member of a protected class; (2) [he] suffered an adverse action in pursuit of [his] education by defendant; (3) [he] was treated differently from similarly situated students who are not members of the protected class; and (4) [he] was qualified to continue in [his] educational pursuit." Koumantaros v. City Univ. of N.Y., No. 03 Civ. 10170(GEL), 2007 WL 840115, at *8 (S.D.N.Y. Mar. 19, 2007) (citing Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir. 2003)); accord Jacques v. Adelphi Univ., No. CV 10-3076, 2011 WL 6709443, at *3 (E.D.N.Y. Dec. 19, 2011); Maya v. Bronx Cmty. Coll., No. 09 Civ. 3605(CM)(DCF), 2011 WL 2732519, at *3 (S.D.N.Y. July 6, 2011). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its conduct. McDonnell Douglas, 411 U.S. at 802. "[S]hould the defendant carry this burden, the plaintiff must then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

In this case, it is undisputed that plaintiff can satisfy the first two elements of a prima facie case. As an African American, he is a member of a protected class, and he suffered an adverse action when he received a failing grade in ICM. I agree with defendant, however, that plaintiff has failed to point to sufficient admissible evidence in the record to raise a triable issue of fact regarding the third element of a prima facie case.

Plaintiff cannot demonstrate that he was treated differently from similarly situated students who are not members of his protected class. His claim rests solely on the allegation that students who failed the Cardiopulmonary reassessment in the prior year were given an additional chance to receive a passing grade by answering essay questions, while plaintiff did not receive that opportunity. Decl. of Karif Patterson ("Pl. Decl."), Dkt. #47, ¶ 68. He asserts that he was

"not afforded an equal opportunity to retake the 2012 Reassessment" on the grounds of his race. Id. ¶ 64. Yet it is undisputed that, of the four students who were granted an additional opportunity to pass the Cardiopulmonary exam in 2011, two of the students were African American. Plaintiff fails to establish a claim of racial discrimination because half of the students who allegedly received preferential treatment were members of his protected class.

Plaintiff attempts to remedy this problem by focusing his claim on one particular student who was allowed to take the essay exam in 2011. He alleges that he was treated differently from A.E., a "Jewish-Caucasian" student who had the lowest score on the Cardiopulmonary reassessment in 2011 but received a passing grade after taking the essay exam. Id. at ¶ 68. However, plaintiff cannot explain why he should be compared to A.E. specifically, rather than to all four of the students who took the essay exam in 2011. Plaintiff merely alleges that Fried, the course coordinator, is also "Jewish-Caucasian" and wanted A.E. to have the opportunity to take the essay exam, so Fried "thus had to allow the three other failing students with higher scores to also reassess." Id. ¶ 69. He asserts that Fried "changed the format of the exam from an objective multiple choice question exam to a subjective essay exam where he could generously grade the Jewish Caucasian female and give her a passing score." Id. ¶ 72. Yet plaintiff has provided no admissible evidence whatsoever to support his contentions that Fried himself is Jewish, that Fried created the additional essay examination with the specific intention of benefiting a Jewish student, or that any benefits to the two African American students were purely incidental. Plaintiff cites only to his own declaration, which is based solely on speculation about matters outside of his personal knowledge and cannot be used to support this argument.

Moreover, even if plaintiff could somehow justify making a differential treatment claim regarding only A.E., rather than all four of the students from 2011, he cannot demonstrate that he

9

and A.E. are similarly situated. To establish a discrimination claim based on disparate treatment, plaintiff must show that he was "similarly situated in all material respects" to the individuals with whom he compares himself. Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (quoting Shumway v. United Parcel Serv., 118 F.3d 60, 64 (2d Cir. 1997)). Here, plaintiff and A.E. took the ICM course in different years and took different Cardiopulmonary reassessments. Fried asserts that he determined that the 2011 reassessment was unfair and that students who failed it should be allowed to answer additional essay questions, while he determined that the 2012 reassessment was fair. Plaintiff argues that Fried's determination is "solely his belief and conjecture" and that no external reviewers ever assessed the fairness of the exam. Pl. Decl. ¶ 71. Again, though, plaintiff cites only to his own declaration. Plaintiff has not put forth any admissible evidence to refute Fried's declaration, which is based on Fried's personal knowledge of grading policies in the course that he supervised. See Koumantaros, 2007 WL 840115, at *9 n. 16 (noting that while "[t]he Court, of course, makes no judgment about the credibility of these witnesses' testimony," plaintiff's statements based on hearsay "cannot be received to refute the administrators' accounts").[3] Therefore, Plaintiff and A.E. are not similarly situated in "all material respects" because defendant has submitted uncontroverted evidence that the exams that were given in 2011 and 2012 were materially different.

Plaintiff has not pointed to any other evidence in the record that is sufficient to create a triable issue of fact regarding his claim of differential treatment. In his deposition, plaintiff testified that, other than the allegedly preferential treatment of A.E., he could not identify any

---

[3] Plaintiff also asserts that "there was not a significantly different failure rate to provide an explanation for the difference in treatment of the failing students from 2011 to 2012," because four students failed the reassessment in 2011 and three students failed in 2012. Pl. Decl. ¶ 70. Defendant has never argued, however, that Fried allowed students to take an additional essay exam in 2011 based on the failure rate on the reassessment. In his deposition and declaration, Fried consistently attested that he allowed the four failing students to answer essay questions in 2011 based on his determination that the reassessment was not a fair test. Therefore, plaintiff's arguments regarding the similarities in the failure rates in 2011 and 2012 do not refute Fried's testimony.

evidence that Fried had treated him differently because of his race. Dep. of Karif Patterson ("Pl.'s Dep."), Coulston Decl., Ex. O, at 29-30. In his declaration, plaintiff asserts that he was subjected to a "hostile environment" at Sophie Davis based on his race. Pl. Decl. ¶ 29. In particular, plaintiff argues that the administration failed to respond appropriately to an incident in 2011, during his campaign for student government president, when plaintiff asserts that two white, female students spread false rumors about him based on stereotypical assumptions about African American males. Id. ¶¶ 21-29.[4] Yet plaintiff has not connected this incident in any way to the decision regarding his ICM grade in 2012. He asserts that Fried must have been "aware of the rape allegations" because they "were common knowledge at Sophie Davis," id. ¶ 26, but Fried specifically denies any awareness of this incident until learning of it through this litigation, Supplemental Decl. of Dr. Ethan Fried ("Supplemental Fried Decl."), Dkt. #40, ¶ 6. Plaintiff also alleges that, as student government president, he became aware of African American and Hispanic students' concerns that Kollisch "was rude and made 'culturally insensitive' remarks." Pl. Decl. ¶ 30. While he names four specific students in his declaration, he does not include any affidavits from those students, so he has not cited any admissible evidence to support this claim. Finally, plaintiff alleges that African American males have a disproportionately low graduation rate at Sophie Davis. Id. ¶ 37. However, Title VI only applies to discrimination claims based on disparate treatment, not disparate impact. See Alexander v. Sandoval, 532 U.S. 275, 281 (2001) ("Title VI itself directly reaches only instances of intentional discrimination.") (internal quotation marks and alteration omitted).

      Therefore, contrary to plaintiff's assertions, this case is distinguishable from Jacques,

---

[4] Defendant disputes plaintiff's characterization of the incident. Defendant submits a letter to plaintiff from a Sophie Davis dean stating that the school had investigated plaintiff's allegations that the two students made false claims about him. Supplemental Coulston Decl., Dkt. #42, Ex. R. The investigation found "that there is not enough concrete information to begin a formal set of disciplinary charges" against the students, but put a form in the students' files censuring them "regarding their negative behavior during this election process." Id.

where the plaintiff alleged that she was subject to racial discrimination in connection with her dismissal from a nursing program. 2011 WL 6709443, at *1. In that case, the plaintiff asserted that her low grade was upheld on appeal while a student who was not a member of her protected class was successful in the appeals process and allowed to repeat the course. 2011 WL 6709443, at *4. In support of her claim, plaintiff submitted affidavits of classmates who said that students in the class tended to choose their seating "along racial lines," that the professor lectured mostly to the "white side of the room," and that the professor helped white students on the exam more than other students. Id. The court found that the plaintiff had established a prima facie case based on the differential outcomes of the appeals process, "the racially segregated classroom, and affidavit testimony." Id. at *5. In Jacques and other cases where courts have allowed claims to go forward, the plaintiffs have cited admissible evidence showing "circumstances giving rise to an inference of discrimination." Id.; see also Peters v. Molloy Coll. of Rockville Ctr., No. 07-CV-2553 (DRH)(ETB), 2013 WL 5652503, at *10 (E.D.N.Y. Oct. 16, 2013) (finding plaintiff established prima facie case with deposition testimony from professor showing that college granted exception to policies for white student but not for plaintiff, though ultimately granting summary judgment for defendant because school provided legitimate non-discriminatory reason).

By contrast, courts in this circuit have dismissed Title VI claims where, as here, the plaintiffs rely solely on their own assertions of differential treatment without any admissible evidence to support their claims. In Koumantaros, for example, after the plaintiff, a white woman, was dismissed from Sophie Davis's physician assistant program based on failing grades, she alleged that the school had given extra chances to non-white students by changing their grades or allowing them to retake tests. 2007 WL 840115, at *8. The court granted summary

judgment for the defendant, finding that plaintiff supported her assertions only by "her subjective opinions, bolstered by hearsay and rumor," without any first-hand knowledge regarding the situations of students who allegedly received preferential treatment. Id.; see also DC v. Valley Cent. Sch. Dist., No 7:09-cv-9036, 2013 WL 2181213, at *6 (S.D.N.Y. May 20, 2013) (granting summary judgment for defendants where plaintiff "adduce[d] no direct evidence" that he was treated differently from similarly situated students on the basis of race); Maya, 2011 WL 2732519, at *4 (granting summary judgment for defendants where "Plaintiff's suspicion of a discriminatory grade change relies on inadmissible hearsay"); Babiker v. Ross Univ. Sch. of Med., No. 98 CIV 1429 THK, 2000 WL 666342, at *5 (S.D.N.Y. May 19, 2000) ("Because plaintiff's claim of discrimination rests entirely on conclusory allegations, summary judgment is appropriate."); Tripp v. Long Island Univ., 48 F. Supp. 2d 220, 224 (E.D.N.Y. 1999) ("Plaintiff has offered no reasons other than her conclusory allegations to substantiate her claim that [her professor] acted with a racially discriminatory intent.").

Here, plaintiff was granted ample time for discovery specifically focusing on his assertion that he was treated differently from similarly situated students who are not members of his protected class. At this stage, the undisputed record shows that two of the students who allegedly received preferential treatment were members of the same protected class as plaintiff. Plaintiff has not pointed to any evidence other than his own speculation to support his assertion of differential treatment. Since plaintiff has not demonstrated a triable issue of fact regarding the third element of a prima facie claim, defendant is entitled to summary judgment.[5]

---

[5] Even if plaintiff could establish a prima facie claim, defendant would still be entitled to summary judgment. It is clear that defendant has provided a legitimate, non-discriminatory reason for allowing the four students in 2011 to take the essay exam but not granting plaintiff the same opportunity: the professor determined that the 2011 Cardiopulmonary reassessment was unfair but that the 2012 exam was fair. Based on the record before the court, no reasonable fact-finder could conclude that defendant's proffered reason is a pretext for racial discrimination.

**III.     Plaintiff's Request for Additional Discovery**

On March 14, 2014, after defendant had served its motion for summary judgment pursuant to the court's briefing schedule, plaintiff brought a motion for discovery. Dkt. #25. Plaintiff seeks to depose Charlotte Martin, an Academic Student Support Manager at Sophie Davis, and Vanessa Jennings, an assistant to Kollisch, regarding comments that Kollisch allegedly made about African Americans. Id. Plaintiff asserts that Martin told him about these comments for the first time during the week of March 3, 2014. Pl. Decl. ¶¶ 31-32. In an order on March 21, 2014, Magistrate Judge Bloom denied plaintiff's motion for discovery, Dkt. #29, and plaintiff appeals the order, Dkt. #31.

A district court will set aside or modify a magistrate judge's discovery order only if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United Parcel Serv. of Am., Inc. v. The Net, Inc., 222 F.R.D. 69, 70-71 (E.D.N.Y. 2004) (internal quotation marks omitted). "Given such a highly deferential standard of review, magistrate judges are afforded broad discretion and reversal is appropriate only if that discretion is abused." Highland Capital Mgmt., L.P. v. Schneider, 551 F. Supp. 2d 173, 177-78 (S.D.N.Y. 2008) (internal quotation marks omitted).

Here, Judge Bloom's order is not clearly erroneous or contrary to law. First, I agree with Judge Bloom that plaintiff's request is untimely. This litigation has been pending since December 2012. After Judge Bloom granted the parties three extensions of the discovery deadline, discovery closed on November 22, 2013. Plaintiff asserts that he just learned about this information in March 2014, but he has failed to explain why he was unable to obtain this information earlier.

14

In any event, as Judge Bloom also correctly concluded, the proposed discovery could not reasonably be expected to raise an issue of material fact. The hearsay statements attributed to Kollisch do not relate to plaintiff or have any connection to the decision regarding plaintiff's ICM grade. "[S]tray remarks of a decision-maker, without more, cannot prove a claim of . . . discrimination," unless "other indicia of discrimination are properly presented." Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) (internal quotation marks omitted). To determine whether "isolated 'stray remarks' are probative of discriminatory intent," courts in this Circuit consider, inter alia, "the context in which the remark was made (i.e., whether it was related to the decision-making process." Henry v. Wyeth Pharms., Inc., 616 F.3d 134, 149 (2d Cir. 2010). Here, viewing the record in the light most favorable to plaintiff, the court assumes that Kollisch can be considered a decision-maker with regard to plaintiff's ICM grade.[6] Even so, the alleged remarks had no relation to the decision-making process regarding the ICM grade or to any academic matters at all. Therefore, even if the request had been timely, allowing plaintiff to conduct discovery regarding Kollisch's statements would have had no bearing on the resolution of defendant's summary judgment motion.

---

[6] Fried states that he is "responsible for assigning final grades to students" in ICM. Fried Decl. ¶ 1. He states that he made the decision to allow the four students in 2011 to take an additional essay assessment "[i]n consultation with the Deputy Dean of Academic Affairs, Dr. Donald Kollisch, regarding the College's policies." Id. ¶ 6. In his deposition, Kollisch testified that Fried consulted with him to find out "whether what he was proposing would be within the rules of the school." Dep. of Donald Kollisch, Coulston Decl., Ex. Q, at 18. When asked whether Fried ultimately made the decision to allow the four students to take the essay exam, Kollisch responded, "the short answer I believe is probably yes." Id. Kollisch also stated, "[Fried] decided to do it, and I decided the rules would be consistent with his doing that." Id. at 19.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment and denies plaintiff's appeal of Magistrate Judge Bloom's discovery order. The action is dismissed in its entirety. The Clerk of Court is directed to enter judgment and close the case. SO ORDERED.

                                                \_\_/s/_____
                                                Allyne R. Ross
                                                United States District Judge

Dated:        July 14, 2014
                Brooklyn, New York